# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 506 - 1 | **DATE** | 1/15/2004 |
| **CASE TITLE** | USA vs. Lawrence Warner | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

## DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Warner's de facto motion for severance denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JAN 16 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 1/15/2004 | 131 |
| | | | date mailed notice | |
| ETV | courtroom deputy's initials | | ETV | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |



UNITED STATES OF AMERICA,     )
                                   )

        Plaintiff,          )
                                   )

        v.              )     No. 02 CR 506
                                   )

LAWRENCE E. WARNER and      )     Judge Rebecca R. Pallmeyer
GEORGE H. RYAN, SR.,        )
                                   )

        Defendants.     )

## MEMORANDUM OPINION AND ORDER

Defendant Lawrence Warner was indicted nearly 17 months ago on charges of racketeering, money laundering, extortion, and mail fraud. The indictment alleged that Warner, who operates commercial insurance and real estate businesses, conspired with high-ranking officials of the Illinois Secretary of State's office, including unnamed "Official A," to steer lucrative state contracts in the direction of vendors from whom Warner took bribes. For reasons related to his lead attorney's trial schedule and need for surgery, Warner requested continuances of the trial date. Some delay resulted, as well, while the court considered his motion to dismiss the indictment on several grounds. Most recently, the trial date on the original indictment was set for February 23, 2004. At the request of government attorneys, Warner signed a written waiver of his rights under the Speedy Trial Act when he agreed to the February 2004 trial date.

On December 17, 2003, the grand jury returned a Second Superseding Indictment, restating many of the same charges against Warner and now identifying former Governor George H. Ryan as Official A involved in the alleged wrongdoing. Mr. Ryan was arraigned on December 23, 2003. His attorney, Daniel K. Webb, asserts that adequate preparation for the trial in this case will take 15 months and asks the court to set a trial date in March 2005.

Defendant Warner strenuously objects to such a lengthy extension for his own trial, which he justifiably expected would be completed long before the end of this year. Warner requests that

his own trial be conducted on February 23, 2004, as previously scheduled and, if necessary to achieve that end, that he and Ryan be tried separately. The government objects to this request, characterizing it as a *de facto* severance motion, one the court must deny. For the reasons explained below, the court concludes that Warner's request for an early trial date, separate from that of his co-Defendant, must be denied.

## DISCUSSION

Under the Federal Rules of Criminal Procedure, more than one defendant may be charged in a single indictment if the defendants "are alleged to have participated in the same act or transaction or in the same series of acts or transactions, constituting an offense or offenses." FED. R. CRIM. P. 8(b); *U.S. v. Thompson*, 286 F.3d 950, 968 (7th Cir. 2002). It is undisputed that Warner and Ryan have been charged with engaging together in a racketeering conspiracy and a scheme to defraud, which satisfies the requirements of Rule 8. Thus, there is a presumption that Warner and Ryan should be tried together. *See U.S. v. Souffront*, 338 F.3d 809, 828 (7th Cir. 2003) ("there is a preference in the federal system for joint trials of defendants who are indicted together"); *U.S. v. Ramirez*, 45 F.3d 1096, 1100 (7th Cir. 1995) "[t]here is a presumption that co-conspirators who are indicted together are properly tried together"). As the Seventh Circuit recently explained,

> Joint trials "play a vital role in the criminal justice system." They promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts."

*Souffront*, 338 F.3d at 828 (quoting *Zafiro v. U.S.*, 506 U.S. 534, 537 (1993)).

## A.   The Speedy Trial Act

Warner does not object on substantive grounds to a joint trial with Ryan. He has, however, invoked his right to a speedy trial, knowing that Ryan cannot be ready for trial by February 23, 2004. The Speedy Trial Act mandates that a defendant be tried within 70 days after the filing of an indictment, or the date on which the defendant first appears before a judicial officer, whichever

is later. 18 U.S.C. § 3161(c)(1). In calculating the 70 day period, "one does not simply count off seventy days from the starting date and see whether the defendant's trial commenced by that date." *U.S. v. Piontek*, 861 F.2d 152, 153 (7th Cir. 1988). Rather, the Act "provides for the exclusion of certain periods of time from this calculation." *U.S. v. Garrett*, 45 F.3d 1135, 1138 (7th Cir. 1995); *U.S. v. Griffin*, 194 F.3d 808, 824 (7th Cir. 1999) (Act requires a trial within 70 days after the filing of an information or indictment "unless certain excludable periods exist").

One of those excludable periods is "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(7). "Where more than one defendant is charged in an indictment, the Speedy Trial clock begins running on the date of the last co-defendant's arraignment." *Garrett*, 45 F.3d at 1138 (citing *Henderson v. U.S.*, 476 U.S. 321, 323 n.2 (1986)). In addition, "absent a severance, any time excludable to one defendant is excludable to his co-defendants." *U.S. v. Mustread*, 42 F.3d 1097, 1106 (7th Cir. 1994); *U.S. v. Tanner*, 941 F.2d 574, 580 (7th Cir. 1991). Under these principles, the "clock" for Defendant Warner began to run on the date of Defendant Ryan's arraignment, and because no severance has been granted, time that Ryan's attorneys reasonably devote to motions and trial preparation is excludable for Ryan and therefore excludable with respect to Warner, as well.

Warner argues that the Speedy Trial clock should not begin to run for him on the date Ryan was first arraigned in December 2003 because he has already been under indictment for nearly 17 months. He urges: "Mr. Warner and his family are not made of ice. The indictment has taken considerable emotional and physical toll both on himself and his family, including his wife, daughter and father-in-law. They all want to put this stigma to bed as quickly as possible." (Defendant Warner's Position Paper Relative to the Trial Date, (hereinafter, "Warner Mem."), at 2.) Warner also claims that his "business phone no longer rings with any degree of frequency," which "wreaks

3

financial havoc, as do mounting legal bills." (*Id.* at 2-3.) The government responds that these factors are insufficient to defeat the presumption of joint trials in light of the purpose of § 3161(h)(7), the lack of prejudice to Warner, the complexity of the case, and Warner's failure to move for a severance. (Government's Brief in Opposition to Defendant Warner's De Facto Motion for Severance and in Support of a Joint Trial (hereinafter, "Gov't Mem."), at 17-18.)

### 1.    Purpose of § 3161(h)(7)

Section 3161(h)(7) "was intended to help avoid the time, expense and inconvenience of separate prosecutions." *U.S. v. Dennis*, 737 F.2d 617, 621 (7th Cir. 1984); *U.S. v. Salerno*, 108 F.3d 730, 737 (7th Cir. 1997) (noting § 3161(h)(7)'s "preference for the judicial efficiency of joint trials"). *See also U.S. v. Hall*, 181 F.3d 1057, 1062 (9th Cir. 1999) ("[t]he general purpose of § 3161(h)(7) is to facilitate the efficient use of judicial resources by enabling joint trials where appropriate"). There can be little question that this general purpose would be ill-served by conducting two trials in this case. By all estimates, trial of these charges is expected to be lengthy and complex. To proceed with such a trial not once, but twice, would tax the resources of the U.S. Attorney's office and disrupt the court's calendar for, in the parties' estimation, at least ten months. Significantly, two trials would necessitate two very difficult and arduous jury selections, which would be particularly burdensome and prejudicial to the second Defendant tried, who will be faced not only with the inevitable pretrial publicity, but also the publicity that the first trial will generate. More importantly, both trials would involve nearly identical lists of witnesses offering nearly identical testimony, with the second Defendant getting a full and complete preview of the government's case. These facts all support a joint trial in this case and militate against Warner's contention that the court ought not exclude from his Speedy Trial clock the delay attributable to Ryan's trial preparation.

4

## 2.    Prejudice to Warner

The court is aware that Warner has been under indictment for nearly 17 months and is not unsympathetic to his desire to put this matter behind him. In light of the circumstances reviewed above, however, the court believes that a separate trial for Warner must be ordered only if Warner can establish that he will be unduly prejudiced if time is excluded under § 3161(h)(7). In *Salerno*, the defendant was charged with, among other things, murder and with conspiring with four co-defendants to commit murder. 108 F.3d at 734. A jury could not reach a verdict on these two charges, and 17 months later the government announced its intention to retry Salerno alone. In the second trial, a jury found Salerno guilty on both counts. *Id.* On appeal, Salerno claimed that the 17-month delay violated the Speedy Trial Act. The court disagreed, finding that the 17 months spent litigating post-trial motions and sentencing issues was reasonable. *Id.* at 737. As for Salerno's claim of substantial prejudice, the court held that "[t]he mere passage of time, without more, is not dispositive," and that Salerno failed to demonstrate that he was unable or less able to present an adequate defense due to the delay. *Id.* at 738. Salerno argued, as Defendant Warner argues here, that he was prejudiced by the "unresolved criminal charges looming over his head," but the court summarily rejected that argument, noting that Salerno was out on bond during the 17-month period. *Id.*

As noted, the only prejudice Warner has identified here is the stigma and stress of being under indictment, and the corresponding financial and business repercussions. (Warner Mem., at 2-3.) Warner is no doubt frustrated by the government's delay in obtaining an indictment against Ryan, but he has not demonstrated that he will be unable or less able to present his own defense if the February 23, 2004 trial date is postponed. Indeed, Warner himself previously requested three delays and agreed to waive his right to a speedy trial to accommodate his attorney's trial schedule and lengthy surgery. At no time has Warner suggested that evidence will be lost or that witnesses

will be unavailable to testify if his trial does not proceed in February 2004 as planned. Moreover, the court notes that at least some of the delay in proceeding with the trial on the earlier indictment may be attributed to the court's consideration of Warner's own well-argued motion to dismiss the indictment, filed in April 2003. Notably, Warner prevailed on a significant portion of that motion, which reduced some of the charges against him. *See U.S. v. Warner*, __ F. Supp. 2d __, 2003 WL 22697289 (N.D. Ill. Nov. 13, 2003). The government has filed a notice of appeal from that ruling, but has also announced its intention to withdraw the appeal absent an order severing the Warner trial from the Ryan trial. (Gov't Mem., at 4.) Thus, to the extent Warner's own motion raises issues as to which the Court of Appeals might part company with this court, he arguably benefits from this concession. Finally, like the defendant in *Salerno*, Warner has been out on bond throughout this case. On these facts, the mere passage of time will not result in undue prejudice to Warner or any Speedy Trial Act violation.

### 3. Severance

In determining whether a delay is reasonable for purposes of § 3161(h)(7), courts have also considered whether the defendant moved for a severance. *See Dennis*, 737 F.2d at 621 (144-day delay not "presumptively prejudicial" where the defendant "at no time moved to sever his case" and "failed to allege any substantial prejudice resulting from the delay"). Warner has assertedly been reluctant to seek a severance here because he does not want to toll the Speedy Trial clock by filing such a motion. (Warner Mem., at 3.) *See* 18 U.S.C. § 3161(h)(1)(F) (excluding "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion"). In his written submission to the court, Warner does suggest that is an appropriate alternative. On this record, however, the court finds the arguments for severance less than compelling.

6

The rules do authorize severance under appropriate circumstances: "If the joinder of offenses or defendants in an indictment . . . or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." FED. R. CRIM. P. 14(a). When defendants have been properly joined under Rule 8(b), however, severance is appropriate only where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539; *Souffront*, 338 F.3d at 828. In addition, to obtain severance, a defendant must show that a joint trial would result in actual prejudice, meaning that "the defendant could not have a fair trial without severance, not merely that a separate trial would offer him a better chance of acquittal." *U.S. v. Mohammad*, 53 F.3d 1426, 1431 (7th Cir. 1995) (internal quotations omitted).

Here, there is no question that had Warner and Ryan been indicted for the first time together, there would be no basis for severance. Warner's only argument in support of severance is that "a joint trial over a year from now would compromise a specific trial right belonging to Mr. Warner - the constitutional right to a speedy trial." (Warner Mem., at 5.) The court has already concluded that Warner has not demonstrated that he will suffer any evidentiary or substantive prejudice due to the delay and that conducting two trials will be significantly taxing to both the government and the court. Warner does not claim that without severance, he will be unable to get a fair trial, or that a jury will be unable to make a reliable judgment about his guilt or innocence. Moreover, as noted earlier, if Warner and Ryan are tried together, the government has announced it will not pursue its appeal of the court's ruling on Warner's motion to dismiss. Warner's speedy trial rights, standing alone, are insufficient to overcome the strong presumption in favor of joint trials and do not warrant severance in these circumstances. *See Souffront*, 338 F.3d at 828.

In sum, the court finds that it is reasonable to make any delay attributable to Ryan for motions and trial preparation excludable to Warner, and to try both defendants together. Having made this determination, the court next considers an appropriate date for trial.

## B.    Trial Date

In this court's view, a fall 2004 trial date would best accommodate Ryan's need to prepare and Warner's reasonable desire for closure. Unfortunately, Mr. Webb has a previous trial commitment that will fully absorb his time for four months, beginning in September. Mr. Webb insists that the four-month trial is not the reason he has requested fifteen months for preparation; the court suspects, however, that regardless how many attorneys are working with Mr. Webb on either of these cases, at least some of the long delay he requests is a function of this other trial. The court could simply set this matter for trial in the fall and direct Mr. Ryan to find substitute counsel. But Mr. Ryan's Sixth Amendment right to counsel of his choice certainly ranks at least as important as Warner's right to a speedy trial. *See U.S. v. Santos*, 201 F.3d 953, 958 (7th Cir. 2000) ("there is indeed a constitutional right to counsel of one's choosing"). As noted earlier, Warner himself agreed to waive his right to a speedy trial so that his own chosen attorney, Edward Genson, could try the case.

With reluctance, the court concludes that the best resolution to this problem is an early firm 2005 trial date. If Mr. Webb's trial schedule should change, the court expects he will promptly report any such change to this court.

ENTER:

Dated:  January 15, 2004

REBECCA R. PALLMEYER
United States District Judge

8