**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 02 CR 506-1,4** |
| | ) | |
| **LAWRENCE E. WARNER and** | ) | **Judge Rebecca R. Pallmeyer** |
| **GEORGE H. RYAN, SR.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

On April 17, 2006, a jury convicted Defendants Lawrence E. Warner and George H. Ryan, Sr. of multiple violations of federal law, including racketeering conspiracy, mail fraud, obstruction of justice, money laundering, and tax violations. Both Defendants filed motions seeking judgment of acquittal or new trials, arguing, *inter alia*, that juror misconduct violated their right to due process, and that the evidence was insufficient to support convictions on several charges. Defendant Warner further argued that the court erred in denying his numerous requests for severance. On September 7, 2006, this court granted judgments of acquittal on two of ten mail fraud counts, finding the evidence insufficient to support convictions on those two charges, but otherwise denied Defendants' post-trial motions in their entirety, including as to all the juror-related issues. *See United States v. Warner*, No. 02 CR 506-1, 02 CR 506-4, 2006 WL 2583722, at *1 (N.D. Ill. Sept 7, 2006). Defendants timely filed notices of appeal. On August 31, 2006, while Defendants' post-trial motions were pending, Ryan filed a motion for release on bond pending appeal pursuant to 18 U.S.C. § 3143(b), arguing that the alleged jury misconduct and other juror-related issues in this case create a sufficient likelihood that his appeal would result in a reversal of the verdict or a new trial. Warner joined Ryan in seeking release pending appeal on September 11, 2006, adopting Ryan's arguments and further contending that the severance issues also warrant bond. For the reasons explained here, Defendants' motions are denied.

# I.    Legal Standard

Section 3143(b), enacted as part of the Bail Reform Act of 1984, provides in pertinent part that a defendant who has been found guilty and sentenced to a term of imprisonment, must be detained pending appeal unless the defendant is not a flight risk or a danger to the community and the court finds "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in . . . reversal [or] an order for a new trial . . . ."  18 U.S.C. § 3143(b)(1)(B); *see United States v. Shoffner*, 791 F.2d 586, 588 (7th Cir. 1986) (per curiam).  The government does not dispute that Defendants pose no flight risk or danger, nor contend that Defendants' appeal is for the purpose of delay.  The sole issue before the court is whether Defendants' appeal "raises a substantial question of law or fact likely to result in" either reversal of the verdict or a new trial.

A literal reading of § 3143(b) might suggest that a district court should not grant bail pending appeal unless the court believes that the conviction would be reversed.  The Seventh Circuit has not adopted such an interpretation, however.  *See Shoffner*, 791 F.2d at 588 (citing *United States v. Miller*, 753 F.2d 19, 22-24 (3d Cir. 1985)); *United States v. Thompson*, 787 F.2d 1084, 1085 (7th Cir. 1986) ("A judge need not find that he should have been reversed, *i.e.*, that he probably will be reversed"); *United States v. Bilanzich*, 771 F.2d 292, 299 (7th Cir. 1985) ("requiring district court judges to determine the likelihood of their own error is repugnant.").  Rather, here as in other circuits, the court must engage in a two-step process: first, the court must determine whether the question raised by the appeal is "substantial"; second, the court must determine whether, assuming the question is decided in the defendant's favor, the Court of Appeals is likely to order reversal of the conviction or a new trial.[1]  *Shoffner*, 791 F.2d at 588; *Bilanzich*, 771 F.2d at 298.  The defendant

---

[1]    The court notes that this two-step process is a judicial creation, one that some courts have suggested is contrary to a plain reading of the statute.  *See United States v. Powell*, 761 F.2d 1227, 1233 (8th Cir. 1985) (asking "Why not interpret [§ 3143(b)] in what may be the most natural (continued...)

bears the burden of making the required showing. *Bilanzich*, 771 F.2d at 298. The district court must provide a statement of its reasons supporting its ruling on a motion for release pending appeal. *United States v. Eaken*, 995 F.2d 740, 741 n.1 (7th Cir. 1993) (citing FED. R. APP. P. 9(b)).

A question is "substantial" if it is "'a "close" question or one that very well could be decided the other way.'" *Bilanzich*, 771 F.2d at 298 (quoting *United States v. Molt*, 758 F.2d 1198, 1200 (7th Cir. 1985) (quoting in turn *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir.1985))). A determination of whether a question is "substantial" must be made on a case-by-case basis. *Id.* at 299. While a district court is not required to "predict the outcome of the appeal[,]" *United States v. Hatterman*, 853 F.2d 555, 557 n.6 (7th Cir. 1988), the court must find "that the appeal could readily go either way, that it is a toss-up or nearly so." *United States v. Greenberg*, 772 F.2d 340 (7th Cir. 1985). Thus, although the court's "task is in some sense predictive[,]" a determination of "substantial" does not entail assessing a defendant's chances before the Court of Appeals. *Shoffner*, 791 F.2d at 589.

A substantial question may exist where the defendant's argument finds support in Seventh Circuit precedent, or where circuit courts are divided. *See Eaken*, 995 F.3d at 741-42 (affirming release pending appeal; where earlier Seventh Circuit decision indicated that the mere concealment of embezzled funds is insufficient to show the intent to evade tax obligations, defendant's "sufficiency of the evidence" challenge raised a substantial question). *See also United States v. Lane*, 281 F.3d 638, 639 (7th Cir. 2002) (Rovner, J., dissenting) (dissenting from the Seventh Circuit's holding denying bond pending appeal, and arguing that the court should have found a substantial question where Seventh Circuit precedent supported defendant's loss-calculation

---

[1](...continued)
and immediately obvious sense, as requiring the defendant to show that the question presented will more likely than not result in reversal?" but rejecting "what may be the simpler interpretation of the law" and adopting the two-step approach first articulated by the Third Circuit).

argument and other circuits were divided as to the proper method of calculation).

The second step—"likely to result in reversal or an order for a new trial"—goes to the impact that the substantial question will have on the ultimate disposition of the appeal. *Bilanzich*, 771 F.2d at 299 (quoting *Miller*, 753 F.2d at 23). The district court must assume that the substantial question presented will go the other way on appeal, and then determine whether that issue is "so integral to the merits that it is more probable than not" that the result would be reversal or a new trial. *Id.* In other words, the determination of whether the question a defendant raises on appeal is "substantial" is an evaluation of its merit; a determination of "likely to result in reversal or an order for a new trial" goes to the "type of question" and its impact. *Id.* (quoting *United States v. Handy*, 761 F.2d 1279, 1280 (9th Cir. 1985)). In *Bilanzich*, for example, the Seventh Circuit affirmed the district court's decision to deny the defendant bail pending appeal where the defendant satisfied neither step: defendant's appeal raised the question of whether evidence was illegally seized, but the question was not a "close call", i.e., not "substantial," because the search was clearly proper under Fourth Amendment jurisprudence; and the conviction would not have been reversed even if the question had been resolved in her favor because none of the evidence was introduced at trial. *Id.* at 300.

The parties here disagree over whether the court should take into account the standard of review the Court of Appeals will likely apply to the issues Defendants have indicated they will raise on appeal. The government argues that where the Court of Appeals will apply a deferential standard of review, Defendants likely cannot make the required showing under the second step of this court's § 3143(b) analysis because even if the reviewing court may be inclined to disagree with this court's substantive decision, the conviction will not be reversed or a new trial ordered absent a finding of abuse of discretion. (Government's Response to Defendants' Motions for Release Pending Appeal (hereinafter, "Govt. Resp."), at 5-6, 23.) Defendants contend that the appellate standard of review should not enter into this court's analysis. (Ryan's Reply in Support of His

Motion for Release Pending Appeal (hereinafter, "Ryan Reply"), at 2, 5-6.) Although neither party cites to any authority holding that a district court either should or should not take into account the likely standard of review, both sides point to district court decisions from this circuit and elsewhere in which courts have either taken or not taken this factor into account. The cases cited by the government note, while engaging in a § 1343(b) analysis, whether a deferential standard of review applies. *See, e.g., United States v. Maas*, No. 05-CR-245, 2006 WL 2345992, at *1-2 (E.D. Wis. Aug. 10, 2006) (explicitly noting the Seventh Circuit's deferential standard of review of determinations concerning the sufficiency and admissibility of evidence); *United States v. Reich*, 420 F. Supp. 2d 75, 90 (E.D.N.Y. 2006) (appeal challenging the admission of evidence under Rule 403 did not present a substantial question because Rule 403 accords discretion to the trial judge); *United States v. Day*, 433 F. Supp. 2d 54, 57 (D.D.C. 2006) (evidence rulings, reviewed for abuse of discretion, less likely to result in a reversal than a resolution of an issue of law, which is subject to *de novo* review); *United States v. Kemp*, 379 F. Supp. 2d 690, 715 (E.D. Pa. 2005) (finding no substantial question where the issues raised by the defendant, including the replacement of a juror with a substitute, all involved matters within its discretion, and which the court decided consistent with precedent from other circuits); *United States v. Viana*, No. 01 CR. 1043 SAS, 2003 WL 22480046, at *2 (S.D.N.Y. Nov. 3, 2003) (rejecting defendants' argument that the court's denial of a mistrial over the jurors' alleged exposure to a prejudicial newspaper article amounted to a substantial question, and noting its wide discretion in these matters); *United States v. Lane*, 194 F. Supp. 2d 758, 777, 782, 786 (N.D. Ill.) (Norgle, J.) (emphasizing that its evidentiary rulings are subject to discretionary review, and holding that Rule 404(b) and Rule 403 challenges raised no substantial questions), *aff'd*, 281 F.3d 638 (7th Cir. 2002); *United States v. Butler*, 704 F. Supp. 1351, 1354 (E.D. Va. 1989) (denial of a mistrial after questioning jurors about the effect of a co-defendant's suicide did not raise substantial question in part because it was reviewable only for abuse of discretion); *United States v. Sokoloff*, 696 F. Supp. 1451, 1455 (S.D. Fla. 1988) (denying

bond where defendant contended that judge should have held a hearing to determine jury misconduct, and noting the court's discretion); *United States v. Draiman*, 614 F. Supp. 307, 311 (N.D. Ill. 1985) (court's restriction of cross-examination, a discretionary matter, raised no substantial question under § 1343(b)).

Defendants, for their part, cite to only three cases—none from this circuit—where courts did not mention the applicable standard of review, and released a convicted defendant on bond pending appeal notwithstanding the fact that the issues involved matters apparently within the courts' discretion. *See, e.g., United States v. Hart*, 906 F. Supp. 102, 106 (S.D.N.Y. 1995) (holding, without mentioning its discretion or the standard of review, that the court's admission of extrinsic acts evidence presented a substantial question "that could very well be decided the other way on appeal" and result in a new trial); *United States v. Colletta*, 602 F. Supp. 1322, 1328-29 (E.D. Pa. 1985) (finding that the prosecutor's improper references during closing arguments to matters not in the record presented a substantial question that upon a contrary appellate ruling would likely lead to an order for a new trial); *United States v. Lamp*, 606 F. Supp. 193, 199 (W.D. Tex. 1985) (noting that in light of contrary authority from other circuits, the court's admission of extrinsic evidence and hearsay statements raised substantial questions).

The Seventh Circuit has not addressed whether a district court should consider the appellate standard of review in its § 3143(b) analysis. Language from the cases supports both parties' arguments. In *Bilanzich*, the court, while discussing the second step of a district court's analysis, observed that even assuming a contrary conclusion on a "substantial" question, "harmless errors, errors that have no prejudicial effect, or errors that have been insufficiently preserved" would not result in reversal or a new trial. 771 F.2d at 292. By analogy, according to the government, issues reviewed for abuse of discretion, even if the appellate court found error, would be unlikely to lead to reversal; thus, the court must take the appellate standard of review into account. (Govt. Resp., at 6.) In *Shoffner*, however, the court explained that a district court "should not base its bail

6

determination on its assessment of a defendant's chance of getting some panel of the Court of Appeals to agree with him." 791 F.2d at 589. The court further stated that the district court should not focus on what the appellate court might do; rather, "the court should return its attention to its *own* analysis of these issues at earlier stages of the proceedings . . . . [The court] must essentially evaluate the difficulty of the question [it] previously decided." *Id.* (emphasis in original). On the other hand, *Shoffner* also acknowledged that a district court's "task is in some sense predictive[,]" involves "[a]n assessment of what will probably happen in the future[,]" and "retain[s] its predictive character . . . ." *Id.*; *see also id.* at 590 (Cudahy, J., concurring) ("the language of the statute does seem to require a district judge to place a bet against himself when he elects to release a convicted defendant on bail. . . . one still seems to be peeking at [the probability of reversal] out of the corner of one's eye." ). Moreover, in *Greenberg*, Judge Posner explained that "'substantial' . . . must mean that the appeal could readily go either way," *see* 772 F.2d at 341, which language *Shoffner* quoted with approval. *See* 791 F.2d at 590 n.6.

In this court's view, the government's "harmless error" analogy is not entirely satisfying. As the Seventh Circuit explained in *Bilanzich*, the purpose of the second step of the § 3143(b) analysis is to assess the impact of the substantial question, assuming that the appellate court decided it the other way. Thus, the standard of review would not enter into that part of the analysis; rather the court must assume that a decision has been made on the merits of the question raised, and assess whether a contrary ruling on that issue would be more likely than not to result in reversal or an order of a new trial. *Bilanzich*, 771 F.2d at 299. On the other hand, the court is not persuaded that it should entirely disregard the likely standard of review under the first part of the § 3143(b) analysis. *Bilanzich* also explains that the test for whether a question is "substantial" is whether it is a "toss-up" or a "close call." *Id.* at 298. What may have been a close call for the district court will not at all be a close call for the Court of Appeals if the question is reviewed for abuse of discretion. Of course, it may make no difference to the end result if the standard of review is taken into account in the first

or second step of the district court's analysis. Nonetheless, if the "ultimate question" is whether the appellate court is more likely than not to reverse, *see United States v. Shields*, No. 90 CR 1044-1, 1992 WL 57941, at *1 (N.D. Ill. March 20, 1992) (Rovner, J.), then the appellate standard of review cannot be altogether irrelevant to the district court's analysis.

The court concludes that it need not adopt a bright-line rule. If a district court invariably took the standard of review into account, then few defendants would likely be able to raise a substantial question for § 3143(b) purposes for any issue reviewed for abuse of discretion, for few such issues would remain a "close call" or a "toss-up" on appeal. But if a court invariably ignored the standard of review, as Defendants advocate, many of the court's decisions would qualify as substantial questions, even though a defendant would have little chance of success on appeal. Countless decisions made by a district court in the course of a trial—decisions, for instance, based on credibility of witnesses, or admissibility of prejudicial evidence under Federal Rule of Evidence 403—are "close calls" when made, but will likely go undisturbed on appeal because such matters are committed to the discretion of the district court. A rule mandating that the court ignore the standard of review for these types of decisions when conducting a § 3143(b) analysis would arguably contradict the express policy of the Bail Reform Act of 1984, which, as the Seventh Circuit has noted, "gives recognition to the principle that a conviction is presumed to be correct[,]" *see Bilanzich*, 771 F.2d at 298 (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 27, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3210), and "assume[s] that post-conviction bail is confined to those who are among the more promising candidates for ultimate exoneration." *Shoffner*, 791 F.2d at 589.

Ultimately, "§ 3143(b) 'requires an affirmative finding that the chance for reversal is substantial . . . .'" *United States v. Ashman*, 964 F.2d 596 (7th Cir. 1992) (per curiam) (quoting *Bilanzich*, 771 F.2d at 298 (quotations omitted)). The Seventh Circuit has directed that a district court consider substantiality on a case-by-case basis, with the burden on the defendant to show

8

the merit of the appeal. *Bilanzich*, 771 F.2d at 298-99. Although the court acknowledges that its role is not to predict the success of Defendants' appeal, the court cannot utterly disregard the lens through which the Court of Appeals will view this court's decisions. Accordingly, the court will, when determining if a question raised by Defendants is "substantial," consider whether this court's previous resolution of the question was committed to its discretion. *See, e.g., Lane*, 194 F. Supp. 2d at 786 ("[Defendant] has failed to raise a substantial question in regard to any evidence that was excluded at trial. Further, and *more significantly*, nothing that occurred at trial could legitimately justify a finding of abuse of discretion by this court in regard to the exclusion of evidence.") (citing *United States v. Swanquist*, 161 F.3d 1064, 1074 (7th Cir. 1998)) (emphasis added). The court does so not in an effort to "predict the outcome of the appeal," (Ryan's Surreply in Support of His Motion for Release Pending Appeal, at 2), but in recognition of the practical reality that not every difficult decision constitutes a "close call" and thus a "substantial question" for purposes of § 3143(b), if the decision fell within the court's discretion when made and will be reviewed only for abuse of that discretion.

With this standard in mind, the court proceeds with its analysis of the questions Defendants have identified as grounds for release pending appeal.

## II.    Analysis

Defendants identify four issues, each of which, according to Defendants, presents a substantial question likely to result in a reversal or an order for a new trial. Both Defendants[2] argue that three juror issues warrant release pending appeal:  extraneous materials brought into the jury room during deliberations by one juror; specific instances of alleged juror misconduct, including jurors' misrepresentations in juror questionnaires, as well as allegedly improper *ex parte* communications by a juror; and this court's removal and substitution of two jurors several days into

---

[2]      Defendant Warner "adopts and incorporates" all arguments raised by Defendant Ryan. (Defendant Warner's Motion for Release Pending Appeal (hereinafter "Warner Mot."), at 2.)

deliberations. (Ryan's Motion for Release Pending Appeal (hereinafter "Ryan Mot."), at 3-8.) Defendant Warner further contends that the court's denial of his many motions for severance raises a substantial question likely to result in an order for a new trial. (Warner Mot., at 2.) The court addresses each issue in turn.[3]

### A. Extraneous Materials in the Jury Room

As described more fully in this court's ruling on Defendants' post-trial motions, Juror Peterson, several days after jury deliberations in this case began, brought two documents into the jury room: the first, two pages printed from the American Judicature Society ("AJS") website, and the second, a handwritten statement in which Ms. Peterson expressed her thoughts on a juror's responsibilities during deliberations. *Warner*, 2006 WL 2583722, at *43-44. Juror Peterson read an excerpt from the AJS document and the handwritten note to Juror Ezell. *See id.* at *42, 44. Several days later, the court excused Juror Ezell for reasons wholly unrelated to this conflict. *Id.* at *43. After learning about the extraneous materials approximately one week after the verdict, the court interviewed Ms. Ezell and Ms. Peterson, in the presence of counsel, and concluded there was no "reasonable possibility" that the extraneous materials affected the verdict. *Id.* at *46.

Defendants contend that this determination "had to have been a close call." (Ryan Mot., at 5-6.) Because the Seventh Circuit "might conclude" that the material was inherently prejudicial, or that the court should have interviewed other jurors, Defendants maintain that the court's handling of Ms. Peterson's conduct presents a "substantial question" on appeal. (Ryan Reply, at 12.) As this question, if resolved differently, would result in reversal or an order for a new trial, Defendants argue that they have made the required showing for release pending appeal under § 3143(b). *Id.* The court disagrees. Because the court's determination that the extraneous materials had no

---

[3] The court has set forth an extensive factual background in its discussion of the juror-related issues in this case in its ruling on Defendants' post-trial motions. *See Warner*, 2006 WL 2583722, at *37-59. The court assumes the reader's familiarity with this background, and recites here only those facts relevant to Defendants' current motions for release pending appeal.

prejudicial effect on the verdict involves an issue committed to the discretion of this court and was not contrary to existing authority, the court's decision was not a close call when made, is not a close call now, and therefore does not present a substantial question warranting release pending appeal.

A new trial "is not automatically required whenever a jury is exposed to material not properly in evidence." *United States v. Sababu*, 891 F.2d 1308, 1333 (7th Cir. 1989). The test is whether there is a "reasonable possibility" that extraneous documents may have affected the verdict. *United States v. Bruscino*, 687 F.2d 938, 940 (7th Cir. 1982). In making its determination, a court may rely on its "familiarity with the proceedings when deciding whether the verdict was affected by outside information." *United States v. Sanders*, 962 F.2d 660, 668 (7th Cir. 1992). Prejudice to the defendants is presumed, *Remmer v. United States*, 347 U.S. 227, 229 (1954), but is rebutted if there is "no 'reasonable possibility' that the verdict was affected by the contact." *Sanders*, 962 F.2d at 668. A district court's determination of whether extrinsic information had a prejudicial effect on the verdict is accorded great deference on appeal and will be upheld absent abuse of discretion. *Bruscino*, 687 F.2d at 940-41 ("The trial judge will always be in a better position than the appellate judges to assess the probable reactions of jurors . . . . As we cannot put ourselves in the district judge's shoes in these matters we ought to accept [the judge's] judgment unless we have a very strong conviction of error.").

Defendants argue that the court's decision presents a "substantial question" because Seventh Circuit precedent fails to address the prejudicial effect of external "legal research" in particular, as opposed to factual material. (Ryan Mot., at 6.) *Cf. Bruscino*, 687 F.2d at 941-42 (district court did not abuse its discretion in concluding that the jurors' exposure to a newspaper article and prison report implicating ties between defendant and the Mexican Mafia did not prejudice the jury). Defendants contend that a case from the Ninth Circuit, *United States v. Rosenthal*, 554 F.3d 943, 950 (9th Cir. 2006), in which the court ordered a new trial based on the "reasonable possibility" that a juror's conversation with an attorney-friend affected the verdict, provides enough

support for Defendants' position as to make it a "close call" for § 3143(b) purposes. (Ryan Reply, at 11.) In *Rosenthal*, the juror's attorney-friend told her, on the eve of rendering a verdict, that she was required to follow the judge's instructions, and indeed "could get into trouble if [she] tried to do something outside those instructions." *Id.* at 950. This court found *Rosenthal* sufficiently distinguishable in its ruling on Defendants' post-trial motions for acquittal or a new trial, and now finds the case sufficiently distinguishable for purposes of Defendants' motion for release pending appeal as well. The Ninth Circuit's holding was based on the effect the attorney-friend's warning of potential punishment would have on the juror's determination of guilt: "a juror who genuinely fears retribution might change his or her *determination of the issue* for fear of being punished." *Id.* (emphasis added). Here, in contrast, the AJS material contained no threat of punishment that could lead a juror to change his or her beliefs as to any issue bearing on a determination of Defendants' guilt or innocence; rather, the excerpt read by Ms. Peterson to Ms. Ezell pertained only to the process of deliberation, and indeed distinguished between a juror's refusal to meaningfully deliberate (a basis for dismissal) and a juror's expression of an alternate viewpoint (no basis for dismissal). *See Warner*, 2006 WL 2583722, at *44. In short, Ms. Peterson's materials created nothing even approaching the potential for prejudice found in *Rosenthal*. The court thus does not share Defendants' belief that *Rosenthal* presents a situation in which the Seventh Circuit, absent precedent of its own, may be persuaded by a similar case decided the other way in another circuit; *Rosenthal* is neither on point nor in conflict with Seventh Circuit precedent.

In any event, a "substantial question" for § 3143(b) purposes does not arise merely because the Seventh Circuit "might conclude" or "could conclude," (Ryan Reply, at 12), that this court's determination was incorrect. *See Shields*, 1992 WL 57941, at *1 (Rovner, J.) ("it is not enough for the defendant to show simply that the court of appeals might disagree with the district court's resolution of a particular issue . . . .") The Seventh Circuit shows significant deference to the district court in matters involving the prejudicial effect of external influence on jurors. *See Bruscino*, 687

12

F.2d at 940-41.  Because the court concludes that Defendants have not presented a "substantial question" arising from the court's finding of no reasonable possibility of prejudice from Ms. Peterson's conduct, the court does not address whether a contrary appellate ruling would be "likely to result in reversal or an order for a new trial."  *See* 18 U.S.C. § 3143(b)(2).

### B.     Juror Misconduct

Aside from extraneous materials brought into the jury room, Defendants identify several other instances of alleged jury misconduct that, Defendants claim, present substantial questions on appeal regarding juror bias.  (Ryan Mot., at 7-8.)  They reiterate their assertions that "[h]alf" of the jurors made "significant misstatements" on juror questionnaires about prior criminal background and involvement with court proceedings; that Juror Chambers engaged in improper *ex parte* communications "and then was untruthful about it"; and that Juror Rein was unwilling to deliberate with dissenting jurors and tried to "oust defense-oriented jurors from the jury."  (*Id.* at 7.) Defendants contend that these individual incidents forced the court to make "difficult decisions that could be resolved differently[,]" and that the "cumulative effect" of this alleged juror misconduct required a mistrial.  (Ryan Reply, at 12-13.)  The court's decision not to declare a mistrial, Defendants maintain, was a "close call" that presents a substantial question under § 3143(b).  (*Id.* at 13.)

Defendants, of course, raised these arguments and more in their post-trial motions.  As a general matter, this court concluded that "both Defendants significantly overstate the degree of juror misconduct in this case."  *Warner*, 2006 WL 2583722, at *37.  Indeed, the court investigated each allegation at the time, relying substantially on its evaluation of the jurors' credibility, and concluded either that the incident did not constitute misconduct at all, or that the conduct did not prejudice Defendants.  For the reasons addressed below, the court now concludes that these issues of alleged juror misconduct do not support Defendants' motions for release pending appeal.

### 1.     Misstatements on Juror Questionnaires

As described at length in the court's post-trial ruling, the court learned after the case went to the jury that a number of jurors had failed to disclose certain criminal matters or involvement in court proceedings on the questionnaires they completed prior to *voir dire*. *Id.* In the case of Jurors Pavlick and Ezell, the omitted history of arrests or convictions was both substantial and suggestive of bias,[4] and the court found upon questioning both jurors that their responses were not credible in certain respects and that truthful answers to the questionnaire would have supported excusing them for cause; accordingly, the court excused both jurors. *Id.* In the case of Jurors Chambers, Svymbersky, Casino, and Rein, however, all of whom had omitted some information from their questionnaires, the court concluded that the circumstances warranted different treatment from Jurors Pavlick and Ezell and allowed those four jurors to deliberate to verdict. *Id.* at *38; *see McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984) (to establish that a juror's responses to *voir dire* questions merit a new trial, "a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause."). This court concluded that the four retained jurors did not answer the questionnaires dishonestly, but even if they had, a "correct answer" would not have formed a valid basis for excusing them for cause. *Warner*, 2006 WL 2583722, at *38.

In reaching its decision, the court made specific credibility determinations as to each juror. Juror Chambers did not disclose divorce and related proceedings in her answer to the question of whether she had ever been involved in a court proceeding. The court credited her explanation that she believed the question referred only to criminal proceedings, and concluded in any event that

---

[4]     Juror Pavlick had been convicted of multiple DUI offenses, one occurring during Defendant Ryan's tenure as Secretary of State; Juror Ezell had been arrested—at least once under an alias—for assault, battery, and possession with intent to deliver cocaine, and had an outstanding warrant for driving on a suspended license. *Warner*, 2006 WL 2583722, at *37. Neither juror disclosed any of this history in their questionnaires. *Id.*

failure to disclose divorce proceedings did not suggest bias.  *Id.* at *38-39.   The court found Juror

Casino's explanation that he had forgotten two minor criminal arrests and a DUI conviction, all more

than 40 years old, "credible, exceedingly so" and not demonstrative of bias.  *Id.* at *40.  Juror Rein,

who failed to disclose a 1980 arrest for assaulting his sister, explained that he thought the matter

had been expunged; the court found the explanation credible, and the omission in no way indicative

of an inability to deliberate impartially.  *Id.*  The court initially had credibility concerns about Juror

Svymbersky, who neglected to disclose a 23-year-old misdemeanor charge for purchasing a stolen

bicycle, but ultimately found his responses credible and concluded that he had not deliberately

omitted the charge; moreover, even had he answered dishonestly, the failure to disclose such a

minor long-ago charge would not have supported dismissing him for cause.  *Id.* at *39.

 Significantly, Defendants do not take issue with the legal standard used by this court; they

simply disagree with the court's conclusion.  They offer no authority that supports a finding that the

court's handling of the questionnaire responses raises a "substantial question."  To the contrary,

case law establishes that credibility determinations are committed to the discretion of this court and

will be entitled to deference upon appeal.  *See United States v. McClinton*, 135 F.3d 1178, 1186

(7th Cir. 1998) (noting that the district court has "primary responsibility to evaluate possible

influences on the jury" and holding that a district court's denial of a mistrial for juror bias is reviewed

for abuse of discretion and will be reversed "only if we have a strong conviction of error"); *United*

*States v. Davis*, 15 F.3d 1393, 1415 (7th Cir. 1994) (deferring to district court's assessment of

juror's demeanor and its conclusion that the juror was qualified); *United States v. Williams*, 737 F.2d

594, 612 (7th Cir. 1984) (deferring to the district court's credibility evaluations when deciding

whether jurors could disregard improper *ex parte* contact).  Although Defendants, as noted, contend

that this court should not take the likely appellate standard of review into account when determining

if one of its decisions is the kind of "close call" that presents a "substantial question" for § 3143(b)

purposes, a decision that rests on a credibility determination illustrates the flaw in Defendants'

argument. Credibility determinations often are close calls for a trial court, but will rarely be a "toss-up" on appeal where such determinations are afforded great deference by the Court of Appeals. *See United States v. Bennett*, 461 F.3d 910, 913 (7th Cir. 2006) ("the district court's credibility determinations are given great deference and they 'cannot be challenged on appeal unless the court credited testimony that was essentially unbelievable as a matter of law.'") (quoting *United States v. Smith*, 308 F.3d 726, 746 (7th Cir. 2002)). For a credibility determination to amount to a "substantial question" under § 3143(b) is to find the statute's requirements satisfied in circumstances where an appeal would have little, if any chance of success.[5]

For the same reason, Defendant Warner's contention that the court's decision to seat alternate Juror Svymbersky following the dismissal of Jurors Pavlick and Ezell was a "close call" and thus a "substantial question" is unpersuasive. (Warner Mot., at 2-3.) As Warner notes, the court initially had misgivings about seating Mr. Svymbersky, but ultimately found his explanation for omitting the stolen bicycle charge credible, and decided to seat him. Tr. at 24759 (03/28/02). In doing so, the court did not, as Warner contends, decide to dismiss Mr. Svymbersky and than "change its mind"; rather, the court voiced initial concerns before any final determination as to Mr. Svymbersky. More importantly, under the two-part *McDonough* test, a determination of whether the information omitted from a juror's *voir dire* responses would support an excuse for cause does not come into play unless the court first determines that the juror answered dishonestly. *See McDonough*, 464 U.S. at 556. The court made no such finding; indeed, as noted, the court

---

[5]        Alternatively, Defendants contend that court's decision to remove some jurors but not others, based on misstatements in the juror questionnaire, will be reviewed *de novo*. The only authority Defendants cite in support of this proposition is *Gonzales v. Thomas*, 99 F.3d 978, 986 (10th Cir. 1996), in which the Tenth Circuit noted that the question of whether a juror is impliedly biased is reviewed *de novo*. *Gonzales* is inapposite. Defendants have never invoked implied bias, in which a juror is alleged to have a personal connection to the parties or personal experiences similar to the facts of the case, *see id.* at 987, and no facts in the record support such a finding. Rather, Defendants' allegations and the court's analysis have consistently focused on whether the questionnaire responses demonstrate actual bias, which the court in *Gonzales* recognized "is a factual question we review only for clear error." *Id.* at 986.

ultimately found Mr. Svymbersky's explanation of the omitted charge both credible and satisfactory. Tr. at 24759 (03/28/06) ("You know what? I find him credible. I really do. I find him credible."). Thus, the court's decision not to dismiss Mr. Svymbersky was based on the fact that the first prong of the *McDonough* test had not been met. *Warner*, 2006 WL 2583722, at *39. That decision, like the decisions to retain Jurors Chambers, Casino, and Rein, in turn rested on a credibility determination that was committed to the discretion of this court.

The court concludes that the juror questionnaire responses do not raise a "substantial question" for purposes of § 3143(b).

## 2. Juror Chambers' Alleged *Ex Parte* Communications

On March 28, 2006, Dennis McLaughlin, the owner of a coffee stand in a commuter rail station, claimed to have had a conversation with Juror Chambers in which she commented on the jury's deliberations and Ms. Ezell's departure. *Warner*, 2006 WL 2583722, at *50. As recounted in the court's earlier decision, Mr. McLaughlin testified that Ms. Chambers, in response to his question about the dismissal of two jurors, told him that deliberations had not progressed past "dealing with 148 pages of rules." *Id.*; Tr. at 25129 (04/11/06). *But see* Tr. at 25137 (04/11/06) (suggesting that he (Mr. McLaughlin) may have made the reference to "148 pages," as it had appeared "in the paper"). Mr. McLaughlin further testified that he told Ms. Chambers about a statement Ms. Ezell's son had made in an television interview to the effect that none of the remaining jurors, after Ms. Ezell's departure, were on Defendant Ryan's side. *Warner*, 2006 WL 2583722, at *50. Ms. Chambers' response, according to Mr. McLaughlin, was that "maybe that was why she was off the case." Tr. at 25129 (04/11/06). Ms. Chambers denied the conversation took place. *Warner*, 2006 WL 2583722, at *50.

The court declined to excuse Ms. Chambers from the jury. *Id.* The court expressed some misgivings about Mr. McLaughlin's version of events, while acknowledging that it had formed a positive impression of Ms. Chambers' credibility over the course of a long trial. Tr. at 25236-37

(04/11/06).  The court made, however, no explicit factual finding as to whether the conversation occurred or what was said.  On the other hand, the court did not, as Defendants assert, find that Ms. Chambers "engaged in an improper *ex parte* communication about the jury's deliberations and then was untruthful about it."  (Ryan Mot., at 7.)  Rather, the basis for the court's decision not to exclude Ms. Chambers from the jury—and for its ruling denying Defendants' motions for a new trial and for acquittal—was that even if the conversation occurred as Mr. McLaughlin claimed, Defendants suffered no prejudice.

In his post-trial motion, Defendant Ryan urged that prejudice from the alleged communication between Ms. Chambers and Mr. McLaughlin must be presumed.  *Warner*, 2006 WL 2583722, at *50; *see Remmer*, 347 U.S. at 229 (third party's anonymous contact with a juror, informing him he could profit if he found for the defendant, amounted to apparent jury tampering and was thus "presumptively prejudicial").  The court rejected this argument, finding the *Remmer* presumption of prejudice inapplicable where there was no indication of jury tampering, and where Ms. Chambers allegedly provided information to a third party, not the other way around.  *Warner*, 2006 WL 2583722, at *51.  In doing so, the court followed the Seventh Circuit's decision in *Whitehead v. Cowan*, 263 F.3d 708, 724 (7th Cir. 2001), where the court found that *Remmer* did not apply, that the defendant had not been prejudiced, and that no new trial was warranted where the witness, the mother of the victim, began shouting at the defendant in the presence of the jury. The court in *Whitehead* found the mother's comments "innocuous" because they did not attempt to persuade the jury and did not provide the jurors with any additional information about the case. *Id.*  In this case, the court found the alleged conversation between Ms. Chambers and Mr. McLaughlin—if indeed it occurred as he claimed—even more innocuous because there was no indication that Mr. McLaughlin attempted to persuade Ms. Chambers or affect her deliberations in any way.  *Warner*, 2006 WL 2583722, at *51.  Indeed, the only piece of information Mr. McLaughlin allegedly communicated to Ms. Chambers was the fact that Ms. Ezell's son had made comments

18

to the media suggesting that no jurors supported Defendant Ryan once Ms. Ezell had been excused. Tr. at 25129, 25138 (04/11/06). The court is confident that this information did not rise to the level of jury tampering, such as would trigger the *Remmer* presumption of prejudice, especially in light of he Seventh Circuit's decision in *Whitehead*. This was not a "close call," and thus not a "substantial question" for purposes of § 3143(b).

The only possibility of prejudice to Defendants from the alleged conversation stems from Ms. Chambers' response when informed of Ms. Ezell's son's comments: Ms. Chambers allegedly responded "maybe that was why [Ms. Ezell] was off the case." Tr. at 25129 (04/11/06). Viewing this ambiguous comment in its most sinister light, as Defendants urge, the comment might indicate that the jurors believed that Ms. Ezell was removed because of her pro-Ryan views. Even in this unfavorable light, however, Ms. Chambers' alleged comment did not prejudice Defendants. First, even if some or all of the remaining jurors held this belief, the court instructed the jury—twice—that Jurors Ezell and Pavlick were not removed because of what had occurred during prior deliberations. *Warner*, 2006 WL 2583722, at *48-49, 51; Tr. at 24804-05 (03/28/06); Tr. at 24972 (04/03/06). Jurors are presumed to follow the court's instructions. *United States v. Thompson*, 286 F.3d 950, 968 (7th Cir. 2002). Second, again assuming some or all of the jurors held this belief, Defendants would have suffered no additional prejudice merely because Ms. Chambers hinted at that belief to Mr. McLaughlin. The harm, if any existed, had been done; the comment to Mr. McLaughlin did nothing to increase or alter any alleged harm from Ms. Ezell's departure; and the court's instructions are presumed to have cured whatever erroneous belief the jurors held regarding Ms. Ezell's departure.

In short, the court is confident that Defendants suffered no prejudice from Ms. Chambers' alleged *ex parte* communication. If the conversation occurred as Mr. McLaughlin claimed, it does not follow that the incident warranted a mistrial. *See Williams*, 737 F.2d at 612 ("Not every improper ex parte contact with jurors requires a mistrial.") (citations omitted). Ultimately, the court concluded

that the alleged conversation "would not [have] affect[ed] a reasonable juror's deliberation as to whether or not [Defendants] committed the crime[s]" they were charged with. *Warner*, 2006 WL 2583722, at *51; *see Whitehead*, 263 F.3d at 725. The determination that Defendants suffered no prejudice from Ms. Chambers' contact with Mr. McLaughlin was not, and is not, a "close call," and cannot be characterized as a "toss-up."

### 3. Juror Rein's Alleged Unwillingness to Deliberate

Defendants argue that Juror Rein's alleged "unwillingness to deliberate with dissenting jurors" and "efforts to oust defense-oriented jurors from the jury" raise an issue of juror bias that presents a "substantial question" on appeal. (Ryan Mot., at 7.) This argument has no merit. On January 23, 2006, well prior to the deliberations (and long before anyone could know which jurors may have been "defense oriented"), Juror Rein expressed frustration as to Ms. McFadden's alleged lack of attention during the trial and stated that it might therefore "be awfully hard" to "respect her opinion" during deliberations. *See Warner*, 2006 WL 2583722, at *42. In post-trial motions, Defendants argued that these comments, and statements made to the media after the trial, show Juror Rein's unwillingness to deliberate with those holding dissenting viewpoints. *Id.* The court rejected Defendants' argument. The court observed that Mr. Rein's post-trial comments to the media were not competent evidence, *see* Fed. R. Evid. 606(b), and declined to credit Defendants' "strained interpretation" of Mr. Rein's January 23, 2006 comments to this court. *Id.*

The court's determination that Defendants had failed to show Juror Rein's unwillingness to deliberate was not a "close call." His post-trial comments to the media are not admissible. As for Mr. Rein's comments to this court, his expression of concern regarding the attentiveness of another juror cannot reasonably be construed as an effort to "oust" other jurors based upon their views of the evidence. Although the court eventually excused Ms. McFadden from the jury, her dismissal was unrelated to Mr. Rein's comments; rather, the court excused Ms. McFadden after learning that her diabetes had been causing her, through no fault of her own, to fall asleep during

trial. *Id.* at *41. The court concludes these circumstances present no "substantial question" within the meaning of § 3143(b).

### 4. Summary of Alleged Juror Misconduct

For the reasons explained above, the incidents discussed here either did not rise to the level of misconduct, or did not prejudice Defendants. The court does not agree with Defendants that its conclusions were "close calls," nor that they present a "toss-up" on appeal. Nor is the court persuaded that the "cumulative effect" of these instances presents a close call as to whether the court should have declared a mistrial. *See United States v. Davis*, 15 F.3d 1393, 1399 (7th Cir.), *cert. denied*, 513 U.S. 896 (1994) (citing *United States v. Henry*, 2 F.3d 792, 794 (7th Cir. 1993)) ("We review a trial court's disposition of a mistrial motion under an abuse of discretion standard; the judge was present throughout the trial and was in the best position to determine the seriousness of any allegations or acts of questionable conduct occurring during the trial."). Having concluded that Defendants have presented no "substantial question" with regard to issues of alleged jury misconduct in this case, the court need not reach the issue of whether a contrary appellate finding would be likely to result in reversal or an order for a new trial. The instances of alleged jury misconduct do not provide grounds for release pending appeal.

### C. Juror Substitution

On March 28, 2006, eight days after deliberations began, the court removed Jurors Ezell and Pavlick after learning they had failed to disclose criminal arrests or convictions in their juror questionnaires. The court then seated two alternate jurors pursuant to Federal Rule of Criminal Procedure 24(c). *See Warner*, 2006 WL 2583722, at *37, 52. The reconstituted jury deliberated for ten days before reaching a verdict. *Id.* at *55.

Defendants argue that the court's substitution of alternate jurors after "eight tumultuous days

of deliberations" provides grounds for release pending appeal.[6]  (Ryan Mot., at 4-5.)  Defendants contend that the court's decision presents a substantial question for § 3143(b) purposes because it was a "difficult decision" for the court at the time, one that the court "plainly struggled with" and that "could go the other way on appeal" due to a lack of controlling precedent.  (*Id.* at 3-5; Ryan Reply, at 9-10.)  Defendants cite to portions of the trial transcript in which this court acknowledged the difficulty involved in its decision to seat the alternates, as proof that the court "candidly admitted" the question could have been resolved the other way.  (Ryan Mot., at 4-5.)  Defendants further maintain that the second step of the § 3143(b) analysis is satisfied because, if the Seventh Circuit concluded that the removal or substitution was improper, Defendants would be entitled to a new trial.  (*Id.* at 5.)

The court's decision to seat alternate jurors was admittedly a challenging one when made, but it does not rise to the level of the kind of "toss-up" or "close call" needed to satisfy the "substantial question" element of § 3143(b).  As discussed in this court's denial of Defendants' post-trial motions on this issue, the decision to seat alternates was supported by the plain language of Rule 24(c) and by Seventh Circuit precedent.  The court took a number of precautions aimed at ensuring that the alternate jurors had not been unduly exposed to trial publicity and that the existing jurors were capable of starting deliberations anew.  *Warner*, 2006 WL 2583722, at *53-54. Furthermore, a decision to replace a juror with an alternate under Rule 24(c) is committed to the discretion of the district court.  For these reasons, the court's decision to seat the alternate jurors does not present the "substantial question" required under § 3143(b).

_____

[6]     Although Defendants appear to cast "removal and substitution" as a single issue, the government correctly notes that this process involved two distinct decisions: first, the court's removal of Jurors Ezell and Pavlick; and second, the decision to seat alternate jurors. (Govt. Resp., at 15.)  The government contends that Defendants waived any objection to the removal of the two jurors, (*id.*), which waiver Defendants dispute.  (Ryan Reply, at 8 n.5.)  Because Defendants in their motion do not argue that the removal of Jurors Ezell and Pavlick was improper, and instead focus their argument on the court's decision to seat alternate jurors, the court for purposes of this decision expresses no opinion as to whether Defendants indeed waived any objection to the jurors' removal.

Rule 24(c) authorizes the district court to "impanel up to 6 alternate jurors to replace any jurors who are unable to perform or who are disqualified from performing their duties." FED. R. CRIM. P. 24(c). As amended in 1999, the rule explicitly permits the replacement of jurors during deliberation as follows:

> The court may retain alternate jurors after the jury retires to deliberate. The court must ensure that the retained alternate does not discuss the case with anyone until that alternate replaces a juror or is discharged. If an alternate replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew.

FED. R. CRIM. P. 24(c)(3); *see United States v. Johnson*, 223 F.3d 665, 670 (7th Cir. 2000) (noting that the amended Rule 24, "altering the previous practice . . . , allows the trial judge to replace a regular juror with an alternate during deliberations . . . ."). Consistent with Rule 24, this court replaced Jurors Ezell and Pavlick with two alternates after deliberations began, and took the very precautions specified by the Rule: directing alternates not to consider media attention; confirming on the record that they had adhered to this instruction; individually interviewing the ten "original" jurors; instructing the reconstituted jury to entirely disregard prior deliberations; and re-reading the original jury charge. *See Warner*, 2006 WL 2583722, at *54.

In their post-trial motions, Defendants argued that these precautionary steps were inadequate, but the court was unpersuaded. *Id.* The court noted that it took the very precautions, and more, specified by the plain language of Rule 24(c)(3)—precautions which, even before the 1999 amendment to Rule 24, courts had found sufficient to obviate prejudice to criminal defendants. *Id.*; *see, e.g., United States v. Hillard*, 701 F.2d 1052, 1056-58 (2d Cir. 1983). Juror substitution once deliberations are underway is *not* presumed prejudicial, and although the Seventh Circuit has not yet directly so held, it has indicated that the amended Rule 24(c) reverses the prior presumption that a substituted juror was incapable of meaningful deliberation. *Warner*, 2006 WL 2583722, at *53-54; *see Johnson*, 223 F.3d at 670. In *Johnson*, reasoning by analogy to Rule 24(c), the Seventh Circuit held that the substitution of a juror with an alternate during the penalty phase of a

23

capital trial did not violate 18 U.S.C. § 3593(b)(1) (requiring that a federal death-penalty sentencing hearing be conducted "before the jury that determined the defendant's guilt"). *Johnson*, 223 F.3d at 669-70. The court observed that under the amended Rule 24(c), "the fact that the alternate missed some of the deliberations is no longer regarded as a fatal objection, or indeed as any objection, to his participating in the jury's decision." *Id.* at 270.

Defendants now argue that this court's decision to seat alternate jurors raises a "substantial question" for § 3143(b) purposes, but they cite no authority that could support an argument that the court's decision violated Rule 24(c) or was in any way improper.[7] They suggest that a lack of controlling precedent is sufficient to create a "substantial question" in these circumstances, where "we were in uncharted waters," (Ryan Reply, at 8-10), but, as noted, the court did not lack for authority: the court followed the Seventh Circuit's *Johnson* decision, the plain language of Rule 24(c), and cases interpreting the pre-1999 version of Rule 24 in reaching its decision. More significantly, the Seventh Circuit does not define a "substantial question" under § 3143(b) by a lack of controlling precedent, nor by the existence of a "novel" issue. *See Bilanzich*, 771 F.2d at 298 (declining to adopt the Third Circuit's formulation of a "substantial question" as "one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful.") (quoting *Miller*, 753 F.2d at 23). Indeed, in *Eaken*, as noted, the Seventh Circuit found a substantial question not where there was any lack of controlling precedent, but where existing Seventh Circuit case law supported the defendant's position. 995 F.2d at 742. Moreover, the "uncharted waters" characterization, a reference to the length of time of deliberation that had passed before the court seated the alternates, is arguably an overstatement. The eight days the original jury deliberated

---

[7]    The cases Defendants cite in their briefs support their argument as to the second step of the § 3143(b) analysis; i.e., whether, if the Court of Appeals found the juror substitution improper, reversal or a new trial would result. *See, e.g., United States v. Lamb*, 529 F.2d 1153, 1156-57 (9th Cir. 1975) (en banc) (reversing defendant's conviction where district court improperly substituted juror after deliberations began). Defendants cite to no authority in support of their argument that this court's juror substitution presents a "substantial question."

were not "full" or "long days," Tr. at 24603-04 (03/28/06), and, as the government points out, Rule 24(c) does not impose a time limit. (Govt. Resp., at 16.) Although common sense suggests that the length of previous deliberations is a factor in considering the propriety of using alternates, the court is confident that the amount of time the original jury spent in deliberations here was not so great as to preclude the court's precautionary steps from having the desired effect on the reconstituted jury.

The court further observes that its decision to seat the alternates was within its discretion. Although this court acknowledges that its task for purposes of Defendants' motions for release pending appeal is not to predict what the Seventh Circuit will conclude upon appeal, the court nonetheless observes that even under the pre-1999 version of Rule 24(c), which did not provide for substitution once deliberations were underway, the Seventh Circuit reviewed a district court's decision to replace a juror with an alternate for abuse of discretion. *See, e.g., United States v. Doerr*, 886 F.2d 944, 970-71 (7th Cir. 1989). There is no reason to assume that a different standard will apply now that the Rule has been amended.[8] Indeed, courts in other circuits apply an abuse of discretion standard when reviewing juror substitution pursuant to the amended Rule 24(c). *See, e.g.,United States v. Gianakos*, 415 F.3d 912, 922 (8th Cir. 2005) ("The decision to excuse a juror for cause and substitute an alternate is vested in the district court's discretion, and will be upheld if the record shows a legitimate basis for the court's decision."); *United States v. Dixon*, 79 Fed. Appx. 456, 457 (2d Cir. 2003) ("A trial judge's decision to dismiss a juror after jury deliberations have begun and proceed to verdict is reviewed for abuse of discretion."). In light of this discretion and careful compliance with Rule 24(c), the court's decision does not amount to the kind of "close call" or "toss-up" on appeal that would present a "substantial question" under §

---

[8] Defendants contend that the issue of whether the court's substitution of jurors in this case violated Defendants' constitutional rights or Rule 24 "are plainly questions of law that are reviewed *de novo*." (Ryan Reply, at 3.) Defendants provide, however, no authority to support this assertion.

3143(b).

As Defendants emphasize, the court did candidly acknowledge the difficulty of its decision at the time it initially dealt with the issue of seating the alternates. (Ryan Mot., at 4-5.) Significantly, however, all the comments cited by Defendants were made *before* the decision was made. The court's "tentative" decision to seat alternates solidified as more information became available, as the court took precautionary steps consistent with Rule 24(c), and as the court monitored the situation to ensure that Defendants suffered no prejudice from the substitution. The court rejects any interpretation of § 3143(b) under which this court, by choosing to frankly share its initial thoughts at the time these juror issues first surfaced, bound itself to an obligation to release Defendants pending appeal. A determination of whether a court's decision was a "close call" and therefore presents a "substantial question" does not entail a consideration only of the court's initial views, expressed in response to a rapidly developing situation. While *Shoffner* instructs this court to "return its attention to its *own* analysis of these issues at earlier stages of the proceedings," 791 F.2d at 589, it does not follow that the court's analysis is limited to the first, and earliest, stage. Rather, the court can, and must, consider the totality of its decision, which includes viewing it with the benefit of hindsight. *See United States v. Gellene*, 24 F. Supp. 2d 922, 926 (E.D. Wis. 1998) (rejecting defendant's argument that the court's admission of evidence under Rule 404(b) that he practiced law without a license presented a "substantial question" warranting release pending appeal, and noting that "[i]n deciding the defendant's motion for release pending appeal, the court has the benefit of viewing the evidence of the defendant's lack of a bar admission against the backdrop of the totality of the evidence presented at trial."); *United States v. Elliott*, 727 F. Supp. 1131, 1132 (N.D. Ill.1989) (Aspen, J.) (defendant presented no "substantial question" arising from the court's admission or exclusion of evidence where, "in retrospect, those decisions were not difficult or close").

Finally, Defendants contend that had the court known, when it dismissed Juror Ezell, that

Juror Peterson had brought extraneous materials into the jury room, the court's decision to remove Ms. Ezell would have been even more difficult. (Ryan Reply, at 9.) The court is puzzled by this argument. As noted, the court removed Juror Ezell, along with Juror Pavlick, because they had failed to disclose criminal arrests or convictions on their juror questionnaires. The fact that Juror Peterson brought extraneous materials into the jury room would have changed nothing with regard to the effect of those misrepresentations, nor would the court's knowledge of the extraneous materials in any way have affected the court's decision to remove Jurors Ezell and Pavlick because of their misrepresentations.[9] Nor is it true that the court "almost certainly would have removed Juror Peterson" had the court known of the extraneous materials. (*Id.*) As discussed, the court found that Ms. Peterson had made "an honest mistake in judgment," one that did not prejudice Defendants or have an effect on the eventual verdict. *See Warner*, 2006 WL 2583722, at *46-48.

Having determined that its decision to replace two jurors with alternates does not present a "substantial question" within the context of § 3143(b), the court need not address whether a contrary resolution of that question would be likely to result in reversal or an order for a new trial.

### D. Severance

Defendant Warner, before and during this trial, made numerous motions for severance, none of which the court granted. *See Warner*, 2006 WL 2583722, at *25-26; *United States v. Warner*, 396 F. Supp. 2d. 924, 933-36 (N.D. Ill. 2005); *United States v. Warner*, No. 02 CR 506,

---

[9] Defendants' argument may seek to imply that Ms. Ezell's removal was somehow related to her conflict with the other jurors—the conflict that inspired Ms. Peterson to bring the extraneous materials into the jury room. *See Warner*, 2006 WL 2583722, at *48. As this court has noted many times, Ms. Ezell's removal was wholly unrelated to any conflict during deliberations; rather, the court dismissed her for misrepresenting her criminal background. *Id.* at *37, 43, 48; Tr. at 24804-05 (03/28/06). The court categorically rejects—as it has at every point in addressing this issue—any attempt to link Ms. Ezell's removal with juror conflict or with Ms. Peterson's extraneous materials.

Moreover, neither the court nor the parties had any knowledge of Ms. Ezell's or Mr. Pavlick's views of the evidence when the court excused them from the jury. Any consideration of those views by this court in its decision to remove these jurors would have been highly improper.

2004 WL 1794476, at *23-24 (N.D. Ill. Aug. 11, 2004); *United States v. Warner*, No. 02 CR 506, 2004 WL 144125, at *4-5 (N.D. Ill. Jan.16, 2004). In his motion for release pending appeal, Warner contends that joinder with Defendant Ryan and this court's denial of his motions for severance raise substantial questions for purposes of § 3143(b). (Warner Mot., at 2.) Warner argues that the court's previous denials of severance "could have been decided the other way"; that joinder with Defendant Ryan caused Warner substantial prejudice because the jury proved itself unable to "follow simple instructions," and thus could not be expected to follow instructions regarding compartmentalizing and weighing of evidence; and that the court's judgment of acquittal on Counts IX and X also demonstrate that the jury was unable to follow the court's instructions. (*Id.*) The court finds that its denial of Warner's motions for severance and Warner's joinder with Mr. Ryan do not present "substantial questions" that merit release pending appeal.

Federal Rule of Criminal Procedure 8(b) provides that defendants may be joined in a single indictment where they are "alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." FED. R.CRIM. P. 8(b). The propriety of joinder is assessed from the face of the indictment. *United States v. Lanas*, 324 F.3d 894, 899 (7th Cir. 2003). The Federal Rules do authorize severance where the court determines that "joinder . . . of defendants in an indictment . . . or . . . for trial appears to prejudice a defendant . . . ." FED. R.CRIM. P. 14(a). The Supreme Court has explained, however, that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). The Seventh Circuit has observed that "[i]n all but the 'most unusual circumstances,' the risk of prejudice arising from a joint trial is 'outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all.'" *United States v. McClurge*, 311 F.3d 866, 871 (7th Cir. 2002) (quoting *United States v. Blassingame*, 197 F.3d 271, 286 (7th Cir. 1999)). Most significant

28

for purposes of Defendant Warner's § 3143(b) motion, this court is afforded "wide discretion in determining when the prejudice of joinder outweighs the benefits of a single trial." *United States v. Carrillo*, 435 F.3d 767, 778 (7th Cir. 2006). The Seventh Circuit would reverse this court's denial of Warner's motions for severance "only upon a showing of a clear abuse of discretion." *See United States v. Quilling*, 261 F.3d 707, 714 (7th Cir. 2001). Warner's contention that this court's denials of severance raise substantial questions likely to result in a new trial, merely because they "could have been decided the other way," is therefore incorrect; he must make a stronger showing than that.

Renewing his motions for severance during trial and at the close of the case, Warner argued that the court should have granted severance because the indictment did not show the existence of a single overarching conspiracy involving both Defendants; that the court's denial of severance compromised Warner's constitutional right to confrontation; and that evidence that was admitted solely against Ryan prejudiced Warner. *Warner*, 2006 WL 2583722, at *26-27. Because the propriety of joinder is determined from the face of the indictment, *see Lanas*, 324 F.3d at 899, and the Second Superseding Indictment charged Warner and Ryan with a single overarching conspiracy and a single scheme to defraud, the court found Warner's first argument to be entirely without merit. *Warner*, 2006 WL 2583722, at *26. This conclusion was not a "close call."

Similarly, the court did not linger over Warner's argument that denial of severance violated the Confrontation Clause. Warner argued that he was denied his right of confrontation because the government proved its false statements charges against Ryan in part by introducing out-of-court statements Ryan made about Warner, and that the court's instructions to the jury not to consider those statements as evidence against Warner were inadequate. The court had, however, excluded all inculpatory statements; moreover, those statements that were admitted were not offered for their truth and thus did not implicate the Confrontation Clause at all. *Id.* at *27-28; *see Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004) ("The [Confrontation] Clause also does not bar the use of

testimonial statements for purposes other than establishing the truth of the matter asserted.") (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)); *Richardson v. Marsh*, 481 U.S. 200, 207-08 (1987) (defendant denied the right to confrontation only when a codefendant's out-of-court statement is so expressly and powerfully incriminating on its face that an "overwhelming probability" exists that the jury cannot disregard the incriminating reference). The court's conclusion that Warner was not denied his right to confrontation was not a "close call."

Finally, the court was not persuaded by Warner's argument that he was prejudiced by evidence that was admitted solely against Ryan. In fact, much of the evidence Warner claimed was admissible only against Ryan would indeed have been admissible against Warner as well, even in a separate trial, because evidence related to the mail fraud and conspiracy charges would be admissible against any other participant in the scheme or conspiracy. *Warner*, 2006 WL 2583722, at *27. The court instructed the jury not to consider evidence admitted against Ryan when considering the evidence against Warner. *See, e.g.*, Final Jury Instr., at 24, 25. The Seventh Circuit has observed that such limiting instructions are "an adequate safeguard against the risk of prejudice in the form of jury confusion, evidentiary spillover and cumulation of evidence," *United States v. Pulido*, 69 F.3d 192, 208 (7th Cir. 1995) (internal quotations omitted), and that jurors are presumed to follow such instructions. *Thompson*, 286 F.3d at 968. In light of the discretion accorded to the district court on this issue, *see Carrillo*, 435 F.3d at 778, the court's conclusion that Warner was not prejudiced by evidence admitted against Ryan was not the kind of "close call" that presents a "substantial question" within the context of § 3143(b).

Warner seizes, however, upon the alleged juror misconduct issues in this case as evidence that the jurors "were not able to follow simple instructions" and therefore "could not be expected to follow the Court's more difficult instructions regarding compartmentalization and weighing of evidence." (Warner Mot., at 2.) Thus, the court's limiting instructions "were not enough to cure the prejudice to Warner caused by the joinder." (Defendant Warner's Reply to Government's Response

to Defendants' Motion for Release Pending Appeal (hereinafter, "Warner Reply"), at 1.)  Although the court rejected this argument when Warner raised it in his post-trial motion, *see Warner*, 2006 WL 2583722, at *57-59, Warner now contends that the argument is meritorious enough to warrant release pending appeal.  (Warner Reply, at 1-2.)  The court disagrees.

As noted, the court gave numerous limiting instructions in this case, directing the jury to consider separately the evidence admitted against each defendant and the legal duties applicable to each defendant, *see Warner*, 2006 WL 2583722, at *26 n.13, *57, which the jurors are presumed to have followed.  *See Thompson*, 286 F.3d at 968.  Warner claimed to have rebutted that presumption, arguing that jurors had proved themselves unable to follow simpler instructions by "lying" on juror questionnaires, failing to avoid trial publicity, and removing notebooks from the jury room.  *Warner*, 2006 WL 2583722, at *57.  The court concluded that jurors did not engage in the degree of misconduct Warner claimed.  *Id.*  The court distinguished the two cases Warner cited as involving "deliberate and outrageous misrepresentations" that were "in no way analogous" to conduct of the jurors in this case.  *Id.* at *58 (discussing *Dyer v. Calderon*, 151 F.3d 970 (9th Cir. 1998) and *United States v. Columbo*, 869 F.2d 149 (2d Cir. 1989)).  *Dyer* and *Columbo* lend little, if any, support to Warner's claim that the jurors' conduct in this case rebutted the presumption that they had followed instructions.  Nor did the court credit the notion that the honest mistakes of a few jurors—such as two jurors' removal of notebooks from the jury room after the return of the verdict—could impute a total inability to follow instructions to the entire jury.  *Warner*, 2006 WL 2583722, at *58.  The court's rejection of Warner's argument was not, and is not, a "close call."

Finally, Warner points to the court's ruling on Defendants' post-trial motions, in which the court concluded, pursuant to Rule 29(c), that there was insufficient evidence to support the jury's verdict for two of the mail fraud charges (Counts IX and X).  *See id.* at *12-13.  Warner argues that this raises a "substantial question" as to the jury's ability to fairly consider, weigh, and compartmentalize the evidence.  (Warner Mot., at 2.)  The court does not share the doubts

expressed by Defendant Warner (and by the writer of a newspaper opinion piece, on which Warner relies), that the court's decision to vacate Defendants' convictions on two of twenty-two counts renders the rest of the jury's verdict suspect. There was substantial evidence to support the jury's conclusions on each of the other counts, and neither Warner nor the opinion writer argue otherwise. Warner identifies no authority, and the court can locate none, holding that a court's dismissal of some counts of a multiple-count indictment on grounds of lack of evidence suggests that the entire verdict is so tainted and suspect that it is likely to be overturned on appeal.

The court thus concludes that Warner's claim that he was prejudiced from joinder does not raise a "substantial question" within the context of § 3143(b), and therefore does not provide grounds for his release pending appeal.

<u>**CONCLUSION**</u>

For the above reasons, Defendants' motions for release pending appeal (848, 870) are denied.

ENTER:

Dated: October 13, 2006

_____
REBECCA R. PALLMEYER
United States District Judge